(65 App. Div. 100.)

## In re EVANS' WILL.

(Supreme Court, Appellate Division, First Department.   November 8, 1901.)

ATTORNEY AND CLIENT—PROBATE OF WILL—CONTEST — ATTORNEY'S COMPEN-
SATION—AGREEMENT—PARTY IN INTEREST.

> Code Civ. Proc. § 2514, par. 11, defines "persons interested" as includ-
> ing every person entitled absolutely or contingently to share in the estate
> or proceeds thereof.  An attorney agreed to contest the probate of a will
> for a percentage of any amount that might come to his client as a
> result of the proceedings or a compromise, and "for better securing" the
> compensation the client assigned the percentage specified, and stipulated
> that it should be a lien "on the claim or interest" of the client.  The
> client was empowered to settle or compromise "as to his interest."  *Held,*
> that the attorney did not acquire an interest in the estate itself, making
> him a party in interest under the Code, so as to enable him to contest
> the probate in his own behalf after his client's compromise and dismissal
> of the proceedings.

Appeal from surrogate's court, New York county.

Probate of the last will and testament of Thomas W. Evans, de-
ceased.  From an order denying a motion of David Keane, coun-
sel for Thomas B. Enos and other contestants, for leave to file
objections, and from a final decree admitting the will to probate
Keane appeals.  Affirmed.

See 68 N. Y. Supp. 936, 937.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGH-
LIN, O'BRIEN, and INGRAHAM, JJ.

J. Noble Hayes, for appellant.
Wolcott G. Lane, for proponent respondent.
Stephen O. Lockwood, for executor respondent.

O'BRIEN, J.   The essential facts underlying the questions urged
upon this appeal were presented and discussed in the opinion in Re
Evans' Will, 58 App. Div. 502, 69 N. Y. Supp. 482.   The agree-
ments therein referred to, and which form the basis of all the ap-
pellant's claims, are two nearly identical instruments; one made
with Thos. B. Enos, and the other with Juliette C. Henderson and
John R. Enos.   These persons, after the agreements were made,
and, as it appears, unknown to Mr. Keane, joined with others inter-
ested in the estate in an agreement of compromise, by the terms
of which the objections which had been filed by Mr. Keane, repre-
senting them, to the probate of the will, were to be withdrawn, and
the will admitted to probate.   Motion was thereafter made by the
proponent to vacate, overrule, and withdraw all objections, which
motion was granted, and from the order thereupon entered Mr.
Keane appealed to this court, which affirmed the order.   In re
Evans' Will, 58 App. Div. 502, 69 N. Y. Supp. 482.   Meanwhile Mr.
Keane had moved for an order to show cause for leave to file ob-
jections to the probate of the will on his own behalf as a person
interested in the estate, which motion was denied, and from the or-
der entered thereupon he now appeals.   On the day of the entry
of that order the proponent moved to proceed with the probate of
the will as an uncontested will, which was opposed by Mr. Keane

on the ground that his appeal then pending from the order striking
out the objections stayed all proceedings in the surrogate's court.
The motion was granted, however, and an order entered placing the
matter on the uncontested calendar. Thereafter probate was al-
lowed, and from the final decree so admitting the will to probate, as
well as from the intermediate order denying Mr. Keane's motion for
leave to file objections on his own behalf, he now appeals.

The appellant's claims on this appeal are thus stated by him:
First. That, although the surrogate's court may have had no power
to refuse proponent's application to discontinue the contest upon
the fraudulent consents of the contestants, nevertheless the appel-
lant was a party in interest, under sections 2514 and 2617 of the
Code, to whom the Code gave an absolute right to appear and con-
test the probate of this will; and that right the surrogate's court
had no power to deny when the party in interest sought to avail him-
self of his right by the appropriate procedure. Second. That the
final decree is an absolute nullity, having been rendered while the
appellant was stayed, and the surrogate's court ousted of its ju-
risdiction, by the appeal then pending in this court; and that the
same appears upon the face of the record, and vitiates the decree;
and that the appellant, being a party in interest, may avail himself
of it at any time while he has standing to be heard as an appellant
or otherwise in any court through which the said proceeding must
pass to final adjudication. On the other hand, the respondents,
among other things, contend that the present appeal is a nullity, in
that the appellant, had he desired to raise the question as to the
decree, should have moved to set aside the decree, and then appealed
from the order denying it; and that as to the stay which, he urges,
affected the validity of the entry of the decree, such stay applied
only to proceedings under the order appealed from. Without, how-
ever, deciding these questions of practice, we think this appeal, on
its merits, must be disposed of by the consideration and determi-
nation of a single underlying question. The entire argument of the
appellant as to his rights under the agreements as to whether he
could file objections to the will on his own behalf, and whether he
could have a stay of all proceedings upon this appeal, is essentially
founded upon the basic contention that under the agreements there
was assigned to him a fixed and aliquot part of the estate, which,
in every stage of the proceedings, entitled him to be heard, because,
as assignee of part of the estate, he was a party interested. If this
should be resolved favorably to the appellant, then all the rights
which he is contending for would follow as matter of course; where-
as, if the contrary view be taken, then, although he has his remedies,
they are other and different than those which should be accorded
to him as a person directly interested in the estate itself. We are
thus called upon to construe the agreements, which, although dif-
fering slightly in phraseology, are essentially the same, and there-
fore what we have to say with reference to one applies with equal
force to the other. The question presented is not a new one in this
court, having been directly involved upon the former appeal; but
upon a re-examination of it—which we are in duty bound to make

—we find no additional reason suggested, nor anything which would lead us to depart from our former decision, and to it we must adhere, although then and now regretting the extent to which it tended to deprive the attorney of a more direct remedy to obtain the compensation which he appears to have fairly earned. We then held that the attorney did not obtain, under the agreements, regard being had to the language employed, an assignment of a separate and distinct part of the estate to the extent of the percentage specified, so as to obtain an absolute right and ownership in such portion of the estate, for which he could sue and recover on his own behalf. The agreements recite that the party of the first part (the client) agreed "to pay to the said Keane, as compensation for the services rendered and to be rendered, a sum equivalent to eight per cent. of any amount or value that may come to him from the estate, * * * either as the result of legal proceedings, compromise, or settlement, or howsoever; and for better securing the compensation of the said Keane aforesaid said [party] for himself, his heirs and executors, hereby assigns eight one-hundredths of any sum or value which may come to him, or which he may be entitled to, from or in the estate; * * * and the payment of such sum is likewise hereby made a lien upon the claim or interest of the said party of the first part against his interest in the estate * * * as it may be made to appear to be." The agreement further recites that the client "shall be at liberty at any stage of the case, either before, during, or after suit commenced, to settle or compromise upon such terms as he may desire as to his interest." Much stress is placed upon these last words, "his interest," the insistence being that this but permitted the client to settle what interest he then had, which would exclude, because he had parted therewith, what he had given to his attorney. This, however, seems to us to be begging the question, because in the end it all turns upon what interest the client had in the estate which he could settle, and this necessarily depends upon and brings us back to the main controversy as to whether or not the attorney, by assignment, became entitled to a separate and severable ownership of an interest in the estate to the extent of 8 per cent. of what the client possessed. It is true that the word "assigns" appears in the latter portion of the clause above quoted, where it is employed in speaking of the security which the attorney was to have; but this is to be considered in connection with the manner in which his compensation was to be measured,—whether by a distinct and separate interest in the estate, or, as the language itself says, by a sum "equivalent to eight per cent. of any amount or value that may come" from the estate. It was to secure this compensation, measured by what should be received by the client, that the latter assigns 8 per cent. "of any sum or value which may come to him, or which he may be entitled to, from or in the estate, * * * and the payment of such sum is likewise made a lien upon the claim or interest of the said party of the first part against his interest in the estate." Our construction of this agreement—that what was intended was that the compensation should be made payable out of the sum realized as the result of litigation or compromise—is en-

72 N.Y.S.—32

forced by referring to two things contained in the clause of the agreement which we have last quoted: First, that therein the payment of the attorney's compensation is made a "lien upon the claim or interest" of the client,—thus evincing an intention, to the extent indicated, of giving the attorney a security or lien in the manner specified upon what the client might realize; and, secondly, that this clause provides that the lien is to be "against his [client's] interest in the estate," which is the same wording as appears in the subsequent clause of what may be settled by the client. We think, therefore, that by the instruments it was agreed to pay to Mr. Keane a certain sum as compensation, which was to be measured by a part of what should "come" to the clients, whether by legal proceedings or compromise or otherwise; and that it was to secure this compensation that they assigned that amount of what they were entitled to or what might come to them from the estate, and made the payment of such sum a lien upon their claim or interest. They further stipulated that they should be at liberty at any time to compromise or settle upon such terms as they should desire as to their interests. To limit this stipulation to an agreement that they should be at liberty to compromise only their interests after deducting what the attorney should receive for his compensation, would, as shown, be an unnatural and forced construction.

Our conclusion, therefore, is that Mr. Keane did not become an absolute owner of any direct interest in the estate by an assignment of a distinct and separable part thereof, and was not, therefore, a person interested in the estate itself, so as to entitle him to intervene and file objections on his own account; but that his rights to compensation were limited to a claim against his clients, secured by a lien upon any sum which they or either of them might obtain from the estate as the result of litigation or compromise. From this conclusion it necessarily follows that as, in our view, Mr. Keane is not a party in interest under section 2514, par. 11, of the Code of Civil Procedure, he was not entitled to intervene and file objections on his own behalf, and therefore the decree admitting the will to probate, and the intermediate order denying him leave to file objections, should be affirmed, with costs. All concur.